UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JOHN ZENO** | **:** | **DOCKET NO.  2:12-cv-2224** |
| **VS.** | **:** | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | **:** | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of Supplemental Security Income Benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on January 22, 2010, alleging disability beginning on January 1, 2005, due to depression, high blood pressure and left leg, arm, and head pain. Tr. 88-91, 98.  The claim was initially denied on April 15, 2010. Tr. 33-38.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 39. Plaintiff and his non-attorney representative appeared at the hearing on January 18, 2011. Tr. 21-32. Following the hearing the ALJ issued an unfavorable decision dated January 28, 2011. Tr. 6-16. In his decision, the ALJ applied the five-step sequential evaluation process and

determined that plaintiff was not disabled under the Social Security Act. *Id.* The ALJ found at Step 2 that plaintiff's medically determinable impairments of left-sided pain, hypertension, elevated prostate-specific antigen, bilateral renal masses, and depression did not constitute severe impairments under the Act and within the meaning of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir.1985). *Id.* Thus, the ALJ determined that plaintiff was not disabled. *Id.*

Plaintiff filed a request for appellate review of this decision and on June 21, 2012, his request was denied. Tr. 1-4. On August 21, 2012, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## FACTS AND MEDICAL EVIDENCE

*A. Facts*

At the time of the hearing, plaintiff was 62 years old. Tr. 24. He testified that he last worked in 2005 selling t-shirts and purses from his vehicle. Tr. 24, 27, 100. He stopped working because he was feeling bad and was not able to perform the work any longer. Tr. 24-25. He stated that he went to the doctor in 2010 and was told that he had kidney and prostate cancer. Tr. 25.

Plaintiff testified that he is in constant pain on the left side of his body. Tr. 28. He stated that he has occasional headaches and pain in his left shoulder, lower back, and left leg. *Id.* He takes medication for the pain which cause drowsiness, dry mouth, loss of appetite and constipation. *Id.* He also testified that he suffers from depression and experiences crying spells. Tr.28-29. He stated that he has trouble concentrating and that he has been diagnosed with hypertension. Tr. 29.

On a typical day, plaintiff wakes up, gets his daughter off to school, and cleans himself up. *Id.* He stated that, "I sit and I, you know, just do, try to do normal stuff." *Id.* Plaintiff stated

that he does not participate in social activities and does not visit family or friends. *Id.* He believes that his cancer contributes to his depression. *Id.*

　B. *Medical Evidence*

　　1. *W. O. Moss Regional Medical Center*

The medical evidence from W.O. Moss Regional Medical Center shows that on July 17, 2009, plaintiff was seen in the emergency room for chest pain. Tr. 176-79. A chest x-ray was normal and plaintiff was referred for a stress test. *Id.* On May 1, 2010, he was again seen in the emergency room for ear pain. Tr. 210. In May of 2010 he was seen at the out-patient clinic complaining of left knee and elbow pain. Tr. 187. Results from x-rays of the left knee and left elbow were normal. Tr. 269-70. Elevated prostate-specific antigen ("PSA") was noted and he was referred to a urology. Tr. 187.

A radiology report dated June 8, 2010, shows no arthritic changes in plaintiff's hips and pelvis and shows calcification in the prostate. Tr. 215. An ultrasound on the same date shows that the liver, spleen and pancreas are normal and no evidence of gallstones. Tr. 216. An ultrasound of the kidneys also on the same date shows a cyst on the right kidney and a large mass on the left kidney. The impression was bilateral renal masses, etiology not clear. Tr. 217. A June 16, 2010, CT scan of the head was normal. Tr. 214.

On July 19, 2010, plaintiff was seen in the emergency room complaining of vomiting and left side body pain. Tr. 197. He reported having a prostate biopsy earlier that day. *Id.* On July 23, 2010, plaintiff was seen at the out-patient clinic and reported that he had a prostate biopsy and was feeling depressed. Tr. 196. He was prescribed Celexa 20 mg. a day. *Id.* On August 11, 2010, he was seen at the out-patient clinic for follow up of elevated PSA. Tr. 207. An undated patient note from the out-patient clinic shows that plaintiff was seen for follow up of

hypertension and reported depression. Tr. 233. He was advised to increase his Celexa to 40 mg. a day. *Id.* On December 14, 2010, plaintiff returned to the out-patient clinic for follow up for hypertension and complaints of depression. Tr. 317.

### 2. *Louisiana State University Health Science Center-Shreveport*

Plaintiff was seen on July 1, 2010, for elevated PSA and renal masses. Tr. 222. He reported a history of hypertension and stated that he was in his usual state of health until last month when he began having shoulder pain and lower urinary tract symptoms. *Id.* He was instructed to take Bactrim for a suspected prostatitis and UTI and to return for CT of abdomen and pelvis and a biopsy. *Id.*

On July 19, 2010, plaintiff underwent a CT of the abdomen and pelvis and a prostate biopsy. Tr. 220-21. The CT of the abdomen and the pelvis both showed a lesion on the upper left renal pole and small renal cysts elsewhere. Tr. 226. The pathology report from the biopsy showed adenocarcinoma. Tr. 309. A bone scan performed on July 27, 2010, showed no definite evidence of osseous metastases at this time. Tr. 225.

Physician notes dated August 13, 2010, indicate that plaintiff's left renal mass is suspicious for renal cancer and that he is high risk for prostate cancer. Tr. 285. He was referred to radiation oncology for prostate disease and scheduled for surgery on September 29, 2010, for a left partial nephrectomy. *Id.*

### 3. *Irene Ngantcha, M.D.*

Dr. Ngantcha performed a consultative examination on March 20, 2010. Tr. 181-84. Plaintiff reported a history of depression, high blood pressure, and pain in his left leg, arm and head. His symptoms of depression include hopelessness, depressed mood, and lack of motivation. He complained of having trouble sleeping, concentrating, and having guilt feelings

about how he lived his life and his relationships. Plaintiff reported that his pain is a 4 on a scale of 1 to 10. Plaintiff also reported chest pain with the last episode one year prior. He has occasional headaches and described intermittent left sided head pain.

Plaintiff is able to dress and feed himself. He stated that he can stand at one time for twenty to thirty minutes for a total of two and one-half to three hours. He can walk about four hundred meters and is able to sit at one time for about forty-five minutes. He can climb three to four stairs at one time. He stated that he can lift ten pounds and drive a car for about twenty-one miles. He is able to sweep, mop, vacuum, cook, wash dishes, and shop. *Id.*

Upon examination plaintiff appeared alert and oriented and in no acute distress. He was able to ambulate, able to get on the exam table, and get up and out of the chair with no difficulty. He was able to dress and undress himself with no difficulty. Plaintiff's range of motion was within normal limits and his grip strength was a 5/5 bilaterally. He was able to walk on his heels, toes, and squat with no difficulty. There were no mental abnormalities noted. He was not nervous during the exam, his personal hygiene was intact, and he could follow simple directions. His affect was normal. *Id.*

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

(quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

### A. *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the

>claimant has a severe impairment[1]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence

---

[1] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at Step 2 of the sequential analysis. The ALJ found that plaintiff's physical and mental impairments were not severe and did not significantly limit his ability to perform basic work activities.

### B. *Plaintiff's Claims*

In his appeal plaintiff argues that substantial evidence does not support the ALJ's decision. Specifically, he sets forth the following arguments:

1. The ALJ applied the incorrect legal standards to conclude that plaintiff's aggregate impairments did not meet the step two durational and severity requirements of the commissioner's regulations.

2. The ALJ's decision is ambiguous.

Applying the facts as set forth in the record to the applicable law we conclude as follows.

### 1. Did the ALJ apply the incorrect legal standard at Step 2?

Plaintiff argues that the ALJ erred at Step 2 of the evaluation. He contends that the ALJ erred in finding that plaintiff's mental impairment of depression did not meet the twelve month durational requirement. Plaintiff, relying on *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir.1986), argues that it is not necessary for a mental impairment to last a continuous twelve months but must be a "long-term problem and not just a temporary set-back."

The Commissioner maintains that the ALJ correctly found that plaintiff's depression did not meet the severity requirement rather than the durational requirement at Step 2 and that substantial evidence supports this determination.

The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Under Fifth Circuit law, "the twelve-month durational requirement for disability could be met in severe mental illness cases even though a claimant is able to work sporadically at a series of jobs," so long as "a claimant has presented medical evidence which 'indicates that his mental condition is a long-term problem and not just a temporary set-back.'" *Cole ex rel. Cole v. Barnhart*, 288 F.3d 149, 152 (5th Cir. 2002) (quoting *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir.1986)

Title 20 C.F.R. §§ 404.1520(c), 419.920(c) provides that an impairment or combination of impairments is considered "not severe" at Step 2 if claimant's physical or mental ability to do basic work activities is not "significantly limited." However, the Fifth Circuit has adopted a different standard for determining whether an impairment is severe. In *Stone,* the Fifth Circuit held that an impairment can be considered as "not severe" only if it is a "slight abnormality" having such a minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985).

After reviewing the opinion, we are convinced that, even though he referred to the twelve month durational requirement in his initial holding at Step 2, the ALJ did not reach his conclusion of no disability based on plaintiff's failure to prove that his depression lasted a

continuous twelve months but rather the ALJ found that, based on plaintiff's testimony and medical evidence, plaintiff failed to prove that his mental impairment met the severity requirement.

At Step 2 of the sequential analysis the ALJ found:

> The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*) with[in] the meaning of *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Tr. 11. Continuing, the ALJ explained his finding regarding plaintiff's depression.

> Although he reported depression to Dr. Ngantcha, he admitted that he never saw a doctor for his symptoms because he felt depression was a "mental illness" and he was not "mental." Indeed, on mental status examination, the claimant was alert, oriented, and in no acute distress. The claimant subsequently reported depression to the Moss Regional out-patient clinic; however, the allegations of symptoms were minimal. The Moss Regional clinic started the claimant on Celexa (20 mg) on July 23, 2010. On September 27, the Moss Regional out-patient clinic increased the dosage to 40 mg despite no noted increase of symptoms. In fact, there were no noted symptoms of depression. Again, on December 14, the claimant reported only depression with no mention of symptoms. The depression did not appear significant enough for the Moss Regional out-patient clinic to note any further prescription of Clelxa. The medical evidence showed no treatment with a mental health specialist. Therefore, the depression appeared only on an isolated basis in out-patient clinic notes, and no medical source assigned any related functional limitations that would have more than a minimal effect on work resulting in a sever impairment under *Stone, supra.*

Tr. 14. The ALJ went on to assess plaintiff's depression using the regulations for evaluating mental disorders found at 20 C.F.R. 404, Subpart P, Appendix 1, Section 12.00C of the Listing of Impairments. Tr. 15. He assessed plaintiff's functioning in the four areas known as the "Paragraph B" criteria and found that plaintiff's mental impairment caused no more than "mild"

limitation in three functional areas (daily living, social functioning and concentration, persistence or pace) and "no" episodes of decompression. *Id.* Based on these findings, the ALJ found that plaintiff's mental impairment of depression was non-severe. *Id.*

Although the ALJ mentioned the durational requirement in his initial finding, the court finds that his decision was not based on this requirement. Although plaintiff argues that the ALJ improperly applied a 12 month durational requirement in relation to his mental impairments, the ALJ's opinion does not reflect that he considered any durational requirement in relation to plaintiff's mental impairment. We find that the medical records submitted are entirely consistent with a *Stone* finding of non-severity.

### 2. Is the ALJ's decision ambiguous?

Plaintiff argues that the ALJ's opinion contains ambiguities which require remand. First, he argues that the ALJ's statement that "[t]he claimant's combination of impairments imposes significant limitations on the ability to perform work-related activities and is thus 'severe'" conflicts with the ALJ's finding at Step 2 that he did not have a severe impairment or combination of impairments. Next, he argues that the ALJ's statement that he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p" is in conflict with his later statement of "[a]s for opinion evidence, SSR 96-6p does not apply because there are no state agency assessments." Plaintiff argues that these ambiguities require reversal and remand in order that the ALJ can explain the inconsistencies.

The Commissioner maintains that the ALJ's decision is clear, that the errors are typographical errors, and that plaintiff has not shown any prejudice from the mistakes. We agree.

The ALJ's finding in bold print at Step 2 states that plaintiff does not have a severe impairment. The ALJ's opinion goes on to explain how he came to that conclusion. There are at least five other times within his sixteen page opinion where the ALJ states, in one way or another, that plaintiff's impairments are not severe.[2] When the opinion is considered as a whole, the one-time statement by the ALJ that plaintiff's impairments are severe is clearly an error and there is no need to remand for clarification.

The same holds true for the ALJ's statement regarding opinion evidence. His first statement appears in a paragraph where the he was discussing the law and what he is required to consider under the applicable regulations and social security rulings. Later in his opinion when he reaches the section where he would consider opinion evidence if available, he comments that there is none to consider. We do not find this ambiguous or misleading and find no need to remand.

## CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled. It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

---

[2] For example, the opinion states:"[i]n reaching the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits his ability to perform basic work activities …" [Tr.12], "finding that the claimant has no severe impairment or combination of impairments for the reasons explained below" [Tr. 13], "the claimant's medically determinable impairments fail to have more than a minimal effect on work and are non-severe" [Tr. 15], "the conclusion that the claimant does not have a physical impairment or combination of physical impairments that significantly limits his ability to perform basic work activities … resulting in a severe impairment under *Stone*" [Tr. 15], "Thus, the claimant does not have a severe impairment or combination of impairments." Tr. 16.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 21st day of July, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE